[No. 3531.]

GILPIN HESKEW v. THE STATE.

1. CATTLE-THEFT — CLAIM OF RIGHT — CHARGE OF THE COURT.— In a trial for theft of a steer the inculpatory evidence consisted of the defendant's possession and use of the animal without the owner's consent. He proved that he took and used the steer publicly and under claim of authority to do so conferred by one G., who, professing to be the agent of the owner, told him to take possession of the steer, and that he, said G., would procure and send him a bill of sale for the animal at a stipulated price. It was further in proof that the defendant, after taking the steer, wrote to G. that he had done so, and called for the bill of sale. G., testifying at the trial, admitted the account given by the defendant of the negotiation between them respecting the steer, except that he denied having made a sale or having claimed to be authorized by the owner to make a sale of the steer; which denial was inconsistent with an affidavit made by himself before the trial, and also with the testimony of another witness. The trial court refused to instruct the jury to the effect that the *bona fides* of the defendant, in the taking of the steer, was not dependent upon G.'s actual possession of the owner's authority in the premises, but upon the defendant's reasonable belief that said G. claimed such authority and conferred it upon him, the defendant. *Held*, that the instruction was the law and should have been given to the jury, and that the conviction is not supported by the evidence, as the State neither proved the felonious intent nor disproved the reasonable account given by the defendant of his claim to the animal.
2. FACT CASE.— See evidence *held* insufficient to sustain a conviction for cattle-theft.

Appeal from the District Court of Gonzales.    Tried below before the Hon. George McCormick.

The appeal in the present case is from a second conviction on the same indictment for the theft of a beef steer belonging to Sandy Glover, on November 1, 1881.   At a previous trial the appellant was convicted, but on appeal to this court the conviction was set aside, for reasons apparent in the seventeenth volume of these Reports, page 261.   At both trials the penalty assessed by the jury was a term of two years in the penitentiary.

In the latter as well as the former trial the principal evidence relied upon by the State was the testimony of Glover (the alleged owner of the steer) and John Ollison, and their testimony at the latter trial was substantially the same as that on the former, which will be found in the report of the former appeal, above cited.

John Woodson was the only other witness who testified in chief for the State at the trial out of which this appeal arises.   He stated that the appellant, in the fall of 1881, asked him to accompany him and help bring home a steer.   Witness and appellant found the steer tied near the public road connecting the towns of Gonzales and Harwood.   Its ears were bleeding.   After they reached the steer the appellant counterbranded it, and put his GIP brand upon its side.   It was the same steer turned over by the defendant to John Ollison to break.   At the time the defendant thus counterbranded and branded the steer, he told the witness he had bought it from a man named Goodwyn when he was in the lower country.   Defendant had been off somewhere awhile before that.

For the defense J. L. Mooney testified that in a conversation with the defendant a while after the latter had taken the steer, he, the defendant, told witness he had bought it in the lower country when he was down there.   Cross-examined, this witness said he knew Sandy Glover's brand and knew the steer in question both by Glover's brand on it and its flesh marks.   Defendant was absent for some time that fall, in pursuit of a horse-thief, as generally said.

J. N. Dismukes, for the defense, testified that in the fall of 1881, just after the defendant had returned from the pursuit of a horse-thief in the lower country (as generally understood), the defendant told witness that while he was gone he had bought a dun three-year-old steer from a man named Goodwyn, who told him to take up the animal, and he, Goodwyn, would send him a bill of sale; and defendant asked witness what he would do under the circumstances.   Witness replied that he would take up the steer, and counterbrand and brand

it. Soon afterwards witness saw in John Ollison's wagon, in the town of Gonzales, a steer which he recognized by the description previously given him by defendant of the one he had bought from Goodwyn. This witness lived within three or four miles of Sandy Glover, and hunted stock in that range, but did not know that Glover had either stock or brand. When defendant first talked to witness about the steer, the witness did not know whether or not defendant had already taken the steer up, nor did he ever see it until he saw it working in Ollison's wagon.

John Botts, for the defense, testified that he had a conversation with the defendant, after Glover reclaimed the steer in question. Defendant told witness that he, the defendant, bought the steer in the lower country from a man named Goodwyn. Witness knew that defendant had been to the lower country in search of his mare, which had been stolen. Witness lived within three or four miles of Sandy Glover, and did not know the latter's brand, nor whether he had any stock.

James Bissett, testifying for the State, in rebuttal, testified that late in the summer or early in the fall of 1881 he accompanied the defendant to Live Oak county in search of the latter's mare, which had been stolen. On their return they stopped all night with a man named Goodwyn. The next morning, at the cow pen, the defendant asked Goodwyn whose brand that was on some cows there, and Goodwyn replied that it was the brand of his cousins, the Doby boys, but that he had control of it. Defendant then said: "There is a little dun stray beef in that brand running near my place in Gonzales county, and I would like to buy him." Goodwyn asked what the defendant would give for the beef, and defendant said he would give $8, and Goodwyn replied: "All right; when you get back, if you find him, send me the money, and I will send you a bill of sale." No money or bill of sale passed between Goodwyn and the defendant at that time, nor did witness then notice the brand they were talking about. Goodwyn said he had authority to control the brand.

F. E. Goodwyn, for the State, testified that in the fall of 1881 the defendant and James Bissett, who said they were hunting a mare, came to witness's house in Live Oak county and stayed all night. The next morning some cows came into the cow pen, and defendant said there was a little dun beef in the same brand as that on the cows running near his place in Gonzales county, and that he thought it was an estray. Defendant asked witness who the brand belonged to, and witness told him. Defendant then asked if he

could buy the steer, and witness told him he thought so, and that he, witness, would see the owner and find out if he would sell the steer. Defendant said he would give $8 for it, and witness replied that that would be better made than lost, and that he thought the owner would sell, and that when defendant got home, if the steer was there, he could send the money for it, and he, witness, would get him a bill of sale. Witness never sold the steer to the defendant, nor told him that he, witness, had any authority to control the brand, or that it belonged to witness's cousins. The brand did not belong to the witness's cousins, but the cows did. About four weeks afterwards, on witness's return to his home from a trip, his wife handed him a letter from the defendant, in which the defendant wrote that he had got the beef, and asked witness to send him the bill of sale. Witness did not answer the letter. Witness, being shown an affidavit which purported to have been made by him in Live Oak county, July 2, 1884, stated that he had made the affidavit of his own free will, but at the defendant's request, and that the facts in it are true. The affidavit in question is to the same general purport as his testimony about what passed between him and the defendant with regard to the steer, but states that he, the witness, told defendant that he, the witness, "had control of the stock, and that if he (the defendant) could get the beef when he got home, to write to me and I would get him a bill of sale for said beef at $8. . . . I never heard he was in trouble about said beef until a few days ago." Proceeding with his testimony at the trial, the witness Glover stated that he did not sell the steer to the defendant, nor tell him that he, witness, had authority to do so. Witness did not have such authority, and did not authorize the defendant to take up the steer.

The evidence shows that there was great similarity between the brand of Sandy Glover and that upon the cows seen by the defendant at Goodwyn's, and mentioned by Goodwyn in his testimony.

James Bissctt was recalled by the defense and testified as follows: "Goodwyn said the brand belonged to his cousins, and that he had authority to control it, and told defendant to get him and he would send bill of sale."

*W. S. Fly* filed an able and forcible brief and argument for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

White, Presiding Judge. On a former appeal the judgment of conviction in this case was reversed for error of the court in refus-

ing to permit defendant to introduce in his behalf certain proposed material evidence. (*Heskew* v. *The State*, 17 Texas Ct. App., 161.)

The fifth paragraph of the charge of the court to the jury, if not objectionable on the other grounds urged to it, is clearly obnoxious to the objection that it requires it to be shown that, if defendant took the animal under authority from another party, such party must have had authority to give him such permission. The question was not whether Goodwyn, the party who the defendant claimed had given him authority to take the animal, was in fact authorized to grant such permission, but, under the facts shown, the question was, did defendant take the animal upon the authority of Goodwin and believing at the time that Goodwin had authority to authorize him to do so? Instead of the paragraph five as given, the special instructions requested upon this phase of the case should have been given, and the court fell into an error in supposing that these special instructions were sufficiently covered by the general charge.

These special instructions, which were refused, are as follows: "If the account given by the defendant of the reasons which induced him to take the animal is reasonable and probably true, or if defendant believed it to be true, whether it was true or not, the jury should acquit the defendant." "Whether or not Goodwyn had any authority to sell the animal, or whether he did in fact or not give any authority to defendant to take said animal, if defendant really believed that said Goodwyn did have and did give the defendant authority to take said animal, the jury should acquit the defendant." Under the very peculiar circumstances of this case, as shown by a previous affidavit of Goodwyn, when considered in connection with Goodwyn's evidence as a witness, we are of opinion these special instructions should have been given. This affidavit of Goodwyn's corresponds with defendant's statement made with regard to the manner in which he acquired and claimed the animal, and, moreover, the State's witness Bissett corroborates them both as to most of the material facts. In his testimony the witness Goodwyn varied the character of his authority to control and sell the animal from that as stated by the other parties, and also as stated in his affidavit, and denied that he had ever sold or had any authority to sell the animal, or that the brand ever belonged to his cousins; though he admitted that he had told defendant that if he would send him the money he would get him a bill of sale from the owner, and also that defendant had written him for the bill of sale, which letter he never answered.

We do not believe that the evidence upon which this conviction rests, as shown by the record before us, is sufficient to establish de-

fendant's guilt of the theft of the animal charged, and we are unwilling that it should stand as a precedent. The animal was taken by defendant openly, under a claim of right, was branded and counterbranded by him, and was used by and under his authority publicly, and, more than all, defendant's statement as to how he came to take and thus claim the animal is in our opinion reasonable, abundantly corroborated, and not disproved by the evidence adduced against him.

*Reversed and remanded.*

[Opinion delivered May 20, 1885.]